In the Matter of the Estate of CIPRIANO ANDRADE, JR., Deceased.

Surrogate's Court, New York County, August 23, 1937.

*Edward J. Redington*, for Donna Easley Andrade, widow, petitioner.

*Larkin, Rathbone & Perry*, for Elizabeth Andrade and George W. R. Andrade, as executors and trustees of deceased.

*Davis, Polk, Wardwell, Gardiner & Reed* [*Logan Fulrath* of counsel], for Guaranty Trust Company of New York, as trustee under deed of trust dated November 11, 1930, made by Cipriano Andrade, Jr.

Delehanty, S. The proof establishes that deceased became incompetent to manage his property and affairs at least as early as September, 1933. His mental condition was doubtful as early as 1931 and, except for the concessions of the executors' counsel, the proof would warrant a finding that deceased was unable to comprehend and act intelligently upon business problems prior to October, 1932, when a joint account was opened in a commercial bank in his and petitioner's names. Assuming, solely because of the concession, that deceased was aware of the legal consequences of the opening of this account, the question posed for decision is whether the balance therein at deceased's death passed to petitioner.

Petitioner is deceased's widow. In 1931 she had procured a power of attorney to handle deceased's affairs. This was done at the suggestion of an eminent alienist who advised petitioner that deceased would lose his memory and be unable to act for himself. After this power was obtained deceased's condition (in petitioner's words) became worse and worse and worse. She was advised that doubt might arise as to her power to act for an incompetent principal and thereafter and in October, 1932, the joint account was opened. Petitioner states that its purpose was to permit her to draw money to pay bills. In January, 1934, the children of deceased by his first wife and that still surviving wife and petitioner (acting for herself individually and purporting to act for deceased as his attorney in fact), entered into an agreement (later modified as to the first wife by an agreement of May 14, 1934, to which only the latter and petitioner in both stated capacities were parties) whereby it was provided in substance that deceased's property would be safeguarded without a committee and that his then existing testamentary instruments would eventually be admitted to probate without contest. In the January, 1934, agreement petitioner expressly acknowledged deceased's sole ownership of the property to be safeguarded and acknowledged his sole ownership of the income therefrom.

The income of deceased had been put in the joint account prior to the January, 1934, agreement, and was so deposited after the agreement was signed. No mention of the joint account was made by petitioner or her counsel to any of the other parties to that agreement. The agreement plainly contemplated deposit of deceased's income in his sole account. The testamentary instruments referred to in the agreement both directed use of deceased's bank balances for specified purposes. In the codicil such direction was accompanied by an exception which forbade use of funds in specially designated accounts which are specifically bequeathed

to petitioner. If petitioner then claimed any title to funds in the joint account the circumstances required her to disclose her claim. While the agreement cannot be said to bind deceased since he was then incompetent, its terms constitute declarations of petitioner available to the parties and to the court in determining her rights in the funds now claimed.

If it be assumed that deceased knew of the opening of the joint account, it may equally be assumed that he knew of the deposits in it up to the date of his incompetency. As to the opening balance and the additional deposits made while deceased was competent, it may be assumed that petitioner acquired a survivor's right which would attach to whatever balance *of those funds* remained in the account at deceased's death. The transcript in evidence shows that the entire balance in the account at deceased's death was due to deposits made within the six months prior to his death. Including the opening balance a total of over $51,000 went into the joint account and $47,000 was withdrawn therefrom in the three-year period it was in existence.

After the January, 1934, agreement, deposits by petitioner of deceased's funds in the joint account was improper. No doubt earlier deposits as well were a breach of petitioner's obligations to deceased. Her power of attorney to act for him lapsed when he became incompetent. She could not, thereafter, so use his money as to create an interest therein on her own account. Her position was that of trustee for him if it be allowed that she had any right to handle his money at all after his incompetency. Whatever interest she had in any funds in the account vanished when *those* funds were withdrawn for household use as they were.

Petitioner testified that the joint account was intended for convenience only. On her own testimony it must be held that she never acquired any property interest in the funds. She had at most a right to draw on the account for payment of household bills. Her claim that in the account are funds of her own is without substance. A wife does not acquire a property right in her husband's money by failure to draw an allowance agreed to be given her. Except for what she calls the leaving in of her allowance she suggests that some trifling earnings of hers went into the account. The proof of such deposits is too tenuous to warrant reliance on it. The amount, in any event, is not shown at all. Petitioner's individual agreement of January, 1934, supplements her testimony that the account was one for convenience only, and constituted a declaration as of that date that she had no interest in the account. Her individual agreement is also an effective estoppel to her present claim whether or not she then had any property right in the fund.

She is barred to assert the claim now made by her against the other parties to the contract.

For all the reasons stated it is held that petitioner has no interest in the sum of $1,500 now demanded by her of the executors as the balance of the joint account funds still in the executors' hands. She had no interest in any part of the balance on hand at the death of deceased.

Submit, on notice, decree accordingly.